UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 15-14303-CV-MIDDLEBROOKS

TIMOTHY D. WILLSON,

     Plaintiff,

v.

BANK OF AMERICA, N.A.,

     Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court on Defendant Bank of America, N.A.'s[1] Motion to Dismiss. (DE 17). Also before the Court is Defendant's Motion for Summary Final Judgment ("Motion for Summary Judgment"), filed February 11, 2016. (DE 52). For the following reasons, Defendant's Motion to Dismiss is denied and Defendant's Motion for Summary Judgment is granted in part and denied in part.

**I.     Background**

This case arises out of alleged violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.*, ("RESPA") Regulation X. On February 23, 2005, Plaintiff "executed and delivered a note, secured by a mortgage on the property located at 645 Cypress Road, Vero Beach, FL 32963" (the "Property"). (PSOF ¶ 1; DSOF ¶ 1).[2] Since February 2005, Defendant

_____

[1] Defendant Bank of America, N.A. is the sole remaining Defendant in this case. Plaintiff voluntarily dismissed his claims against QBE First Insurance Agency on December 4, 2015. (DE 37).
[2] Defendant's Statement of Undisputed Material Facts is located in its Motion for Summary Judgment. *See* (DE 52). Plaintiff's Statement of Undisputed Material Facts is located in his Response. *See* (DE 56).

has serviced the loan.   (PSOF ¶ 2; DSOF ¶ 2).  Also since that time, Defendant has initiated four foreclosure actions against Plaintiff.  *See* (PSOF ¶¶ 3-12; DSOF ¶¶ 3-12).   The first three foreclosure actions were dismissed:  in the first two actions, Defendant voluntarily dismissed the case and granted Plaintiff a loan modification; in the third action, the case was dismissed for lack of prosecution.  (PSOF ¶ 5-10; DSOF ¶ 5-10).

The instant case concerns the fourth foreclosure action (the "Fourth Foreclosure Action"). On December 2, 2013, Defendant filed the Fourth Foreclosure Action in Florida state court (the "Foreclosure Court").  (PSOF ¶ 12; DSOF ¶ 12).  The Foreclosure Court entered a Final Order Scheduling Trial on October 16, 2014, setting the trial date for December 1, 2014.  (PSOF ¶ 13; DSOF ¶ 13).

On November 4, 2014, Plaintiff sent Defendant an email requesting a potential modification of the loan and including an attachment with the requesting documents, which Plaintiff characterizes as a loss mitigation application (the "November 4 Email").  (DE 15-2 at 9; PSOF ¶ 20; DSOF ¶ 20).  The Parties dispute whether the attachment to the November 4 Email was corrupted and whether, due to this alleged corruption, the November 4 Email went to Defendant's spam folder.  (PSOF ¶ 20; DSOF ¶ 20).

On November 21, 2014, Defendant filed a motion for continuance, which was denied by the Foreclosure Court on November 26, 2014.  (PSOF ¶ 18; DSOF ¶ 18).

On December 1, 2014, the Foreclosure Court held a trial on the Fourth Foreclosure Action (the "Trial").  (DE 52-8 at 2).  On the same day, Defendant sent Plaintiff an email requesting that Plaintiff resend the request for the loss mitigation application, stating the November 4 Email "was corrupted in [sic] it went to SPAM mail."  (DE 15-2 at 9).  Plaintiff resent the documents for the loss mitigation application.  (PSOF ¶ 21; DSOF ¶ 21).

On January 12, 2015, the Foreclosure Court entered a final judgment of foreclosure against Plaintiff and scheduled a sale of the Property for February 17, 2015. (PSOF ¶ 39; DSOF ¶ 39; DE 52-8 at 5).

On January 17, 2015, Defendant informed Plaintiff that he did not qualify for a loss mitigation application (the "Denial"). (PSOF ¶ 41; DSOF ¶ 41).

On January 27, 2015, Plaintiff filed a Motion for Rehearing and, in the Alternative, an Evidentiary Hearing and Motion for Stay ("Motion for Rehearing"). (PSOF ¶ 42; DSOF ¶ 42; DE 52-9 at 2). In the Motion for Rehearing, Plaintiff raised the argument that, due to the November 4 Email, RESPA Regulation X "precluded [Defendant] for moving for a final foreclosure judgment." (DE 52-9 at 7; PSOF ¶ 42; DSOF ¶ 42). The Foreclosure Court denied the Motion for Rehearing on January 28, 2015. (PSOF ¶ 43; DSOF ¶ 43).

Plaintiff sent Defendant a notice of error on February 9, 2015. (PSOF ¶ 44; DSOF ¶ 44; DE 58 ¶ 44). In this first notice of error ("First Notice"), Plaintiff contended that Defendant improperly failed to respond to the November 4 Email, thereby depriving him of protections under RESPA Regulation X. (DE 56-2 at 5-8).

Plaintiff sent Defendant an appeal of the Denial on February 15, 2016 ("Appeal of Denial"). (PSOF ¶ 43; DSOF ¶ 43; DE 56-2 at 14). Plaintiff then sent Defendant a second notice of error ("Second Notice") on February 16, 2016. (PSOF ¶¶ 46, 68-69; DSOF ¶¶ 46, 68-69; DE 56-2 at 19-20).

On March 18, 2015, Defendant responded to the First Notice, the Appeal of Denial, and the Second Notice. (PSOF ¶ 54; DSOF ¶ 54; DE 56-6 at 68-71).

Plaintiff filed for bankruptcy to prevent a foreclosure sale. (DE 15 at ¶ 77).[3]  On August 27, 2015, Plaintiff brought the instant action alleging multiple violations under RESPA Regulation X. (DE 1). Plaintiff filed an Amended Complaint on October 16, 2015. (DE 15).

The first two counts of the Amended Complaint concern Defendant's alleged failure to respond to the November 4 Email. Count I alleges a violation of 12 C.F.R. § 1024.41(b)(2) for failure to provide, within five business days, written notification of receipt of the loss mitigation application and indication whether the application was complete. (DE 15 at ¶ 80). Count II alleges violations of 12 C.F.R. § 1024.41(g) for "moving forward with conducting and introducing evidence" at the trial in the Foreclosure Action, despite Defendant allegedly having received a loss mitigation application. (DE 15 at ¶ 110).

The remaining counts concern Defendant's alleged failures in conducting an improper review of the Denial. Count III alleges Defendant violated 12 C.F.R. § 1024.41(h) for failing to conduct a proper review of Plaintiff's Appeal of Denial. (DE 15 at ¶¶ 126-30). Counts IV, V, and VI allege Defendant failed to investigate and properly respond to Plaintiff's First and Second Notice. (DE 15 at ¶¶ 147, 160). On October 26, 2015, Defendant filed the Motion to Dismiss (DE17), to which Plaintiff responded on November 11, 2015 (DE 30). On February 11, 2016, Defendant filed the Motion for Summary Judgment. Plaintiff responded on February 26, 2016 (DE 56), to which Defendant replied on March 2, 2016 (DE 58).

## II.     Legal Standard

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6).  In assessing the legal sufficiency of a complaint's allegations, the

---

[3] It is unclear from the record exactly when Plaintiff filed for bankruptcy.

Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F. 3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F. 3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F. 3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purpose of determining whether a claim is legally sufficient).

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2). Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555-56. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3. Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* at 555 (citation omitted). "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

### B. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587 (citing Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

"A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

### III.    Motion to Dismiss

In its Motion to Dismiss, Defendant argues, *inter alia*,[4] that Plaintiff is barred from asserting a claim under Regulation X of the Real Estate Settlement Procedures Act ("RESPA") 12 C.F.R. § 1024.41, because Plaintiff is seeking review of a duplicative request. (DE 17 at 6-7). Specifically, Defendant contends that, since Defendant already granted Plaintiff a loan modification in 2008, Defendant is not bound by the requirements under §1024.41. (*Id.* at 8).

In response, Plaintiff contends that the effective date of Section 1024.41 was 2014, after the original loan modification was made, and thus does not apply.  (DE 30 at 2).  Plaintiff also argues Defendant has not established that the loan modification was based on a complete loss mitigation application.  (*Id.* at 3-4).

Section 1024.41(i) provides:

> Duplicative requests.  A servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account.

12 C.F.R. § 1024.41(i).  It appears that Defendant granted Plaintiff a loan modification in 2008. However, it is unclear whether the 2008 loan modification was made in response to a complete loss mitigation application, as opposed to a request for a loan modification only.  A loss mitigation application includes requests for loan modification, but it also includes requests for

---

[4] Defendant's remaining arguments were also made in its Motion for Summary Judgment.  I address those arguments *infra* in Section IV.

other loss mitigation programs. *See McKinley v. Fed. Home Loan Mortgage Corp.*, No. CV 212-124, 2013 WL 4501327, at *5 (S.D. Ga. Aug. 22, 2013) ("[The defendant] notified [the plaintiff] of various potential loss mitigation options, including a HAMP loan modification, repayment plan, and a short sale of the [p]roperty.") (noting that the defendant advised the plaintiff of the variety of loss mitigation options); *Peterson v. Wells Fargo Bank, N.A.*, No. 13-CV-03392-MEJ, 2015 WL 3397385, at *7 (N.D. Cal. May 26, 2015) ("Defendant notes that it reviewed . . . other loss mitigation options, including . . . the option of a payment assistance . . . , the option of a short sale . . . , and modification under HAMP") (noting the same). Construing the Complaint in the light most favorable to Plaintiff, Plaintiff's past loan modification may not have been the result of a complete loss mitigation application. Defendant has, therefore, not established that the current loss mitigation application is a duplicative request. Accordingly, the Motion to Dismiss is denied.

## IV.    Motion for Summary Judgment

In its Motion for Summary Judgment, Defendant contends it is entitled to final summary judgment in its favor, arguing review of Plaintiff's claims is barred under the *Rooker-Feldman* doctrine and that Plaintiff has not established there is a genuine dispute of material fact as to any of his claims.

### a.  *Rooker-Feldman*

Defendant argues that Plaintiff's claims are "inextricably intertwined with his final state-court foreclosure judgment" and therefore, under the *Rooker-Feldman* doctrine, the Court lacks jurisdiction to review them. (DE 52 at 10). Plaintiff responds that he "is appealing the state court's judgment in an entirely separate matter. [Plaintiff] is not claiming that the [Foreclosure Court] was in error in entering judgment, but rather that Defendant was in error, in part, in

moving for such judgment." (DE 56 at 10). In reply, Defendant contends that Plaintiff is in fact challenging the state court's foreclosure judgment. (DE 58 at 9). Defendant does not dispute that Plaintiff is currently appealing the foreclosure judgment in state court. *See* (*id.*).[5]

The *Rooker-Feldman* doctrine applies where the Supreme Court's "jurisdiction over state-court judgments . . . precludes a United States district court from exercising subject-matter jurisdiction in an action[.]" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). The doctrine bars district courts from exercising subject-matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

*Rooker-Feldman* only applies to federal actions filed "after the state proceedings have ended." *Nicholson v. Shafe*, 558 F.3d 1266, 1275 (11th Cir. 2009). "[S]tate proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action[.]" *Id.* at 1279.

Here, Plaintiff is currently pursuing an appeal in state court from the foreclosure judgment. *See Timothy Willson v. Bank of America*, 4D15-552 (Fla. 4th DCA 2015).[6] Because an appeal of the state court judgment remains pending, the state proceedings have not ended and *Rooker-Feldman* does not apply. This Court, therefore, has jurisdiction over this action.[7]

---

[5] Defendant does, however, contend that there "are no procedural bars to the application of the *Rooker-Feldman* doctrine to this case as it was filed subsequent to Plaintiff's state court judgment." (DE 52 at 11).
[6] I may take judicial notice of state court proceedings. *Coney v. Smith*, 738 F.2d 1199, 1200 (11th Cir. 1984).
[7] Defendant did not raise any other abstention doctrines.

### b.  Count I

Count I alleges a violation under § 1024.41(b)(2) against Defendant for failing to provide written notification of receipt of a loss mitigation application.  Section 1024.41(b)(2) imposes a duty on servicers of a mortgage loan.  When the servicer receives a loss mitigation application 45 days or more before a foreclosure sale, it must:

> Notify the borrower in writing within 5 days . . . after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete.

12 C.F.R. § 1024.41(b)(2)(i)(B).  Defendant seeks final judgment as to Count I, arguing that (1) no foreclosure sale was scheduled when Plaintiff submitted the loss mitigation application, (2) the November 4, Email was corrupted and did not constitute a loss mitigation application, (3) Plaintiff's initial loss mitigation application was incomplete, and (3) Defendant complied with § 1024.41(b)(2) by responding to the loss mitigation application.[8]

### i.  No Foreclosure Sale Was Scheduled

First, Defendant argues that § 1024.41(b)(2) only applies once a foreclosure sale is scheduled.  Defendant, however, provides no authority for that argument.  A plain reading of § 1024.41(b)(2) requires a written response to a borrower within five days of receipt of a loss mitigation application if the servicer receives such application 45 days or more before a foreclosure sale.  *See Lage v. Ocwen Loan Servicing LLC,* No. 14-CV-81522, 2015 WL 7294854, at *7 (S.D. Fla. Nov. 19, 2015).  Accordingly, I reject Defendant's argument that it never violated § 1041(b)(1) because the foreclosure sale had yet to be scheduled.

---

[8] Also as to Count I, Defendant argues there is no genuine dispute of material fact that Plaintiff has failed to establish damages.  As these arguments are generally identical to arguments Defendant raises against all claims, I reserve discussion of those arguments for the damages section as applied to all claims. *See infra* Section IV(f).

10

### ii.  The November 4 Email was Corrupted

Second, Defendant contends there is no genuine dispute that the November 4 Email was corrupted, and therefore, Defendant did not receive the loss mitigation application until it was sent on December 1, 2014.  (DE 52 at 12).  Defendant further contends that it responded to Plaintiff within 5 days, on December 2, 2014, acknowledging receipt of the loss mitigation application and that it was incomplete.  (DSOF ¶ 23).

Defendant argues the evidence shows the November 4 Email to its outside counsel contained a corrupted attachment that caused it to be sent to outside counsel's spam folder, and thus, the date of Defendant received Plaintiff's loss mitigation application is the date of Plaintiff's second email (December 1, 2014).  (DE 52 at 12).  In support, Defendant cites to the affidavit of outside counsel who was sent the November 4 Email, Karen Green.  Ms. Green avers her law firm responded to the November 4 Email on December 1, 2014, explaining to Plaintiff's counsel that the November 4 Email was corrupted and needed to be resent.  (DE 52 at 12) (citing DE 52-7 at 3, ¶ 10; DE 15 ¶ 33; DE 15-2 at 9).  Attached to her affidavit is a copy of that email. (DE 57-2 at 20).  Defendant argues that it complied with the response requirements when it received the application on December 1, 2014 and that Defendant, therefore, did not violate § 1024.41(b)(2).  (*Id.* at 13).

In response, Plaintiff contends that "Defendant has not actually proffered any actual evidence [to] establish that the e-mail was actually corrupted and went to SPAM mail."  (DE 56 at 10; PSOF ¶ 20).  Plaintiff also submits an affidavit from Leo Desmond, Plaintiff's counsel at that time.  Attached to Mr. Desmond's affidavit is a copy of the email thread between Mr. Desmond and Defendant's outside counsel, Karen Green.  The email thread shows multiple emails between counsel from October 28, 2014 to November 20, 2014, and contains the

November 4 Email, which reads: "Attached are the documents requested of my client for a potential modification. Please let me know if your client needs anything else prior to mediation." (DE 56-1 at 6).[9] On November 20, 2014, Mr. Desmond asks Ms. Green in the email thread to "confirm that your client is in possession of a complete mitigation package from my client." (*Id.* at 3). Thus, even assuming the original November 4 Email went to Ms. Green's spam folder, Ms. Green was asked to confirm on November 20 whether the "mitigation package" was received. That inquiry likely should have prompted Ms. Green to investigate whether she had received the November 4 Email in her primary email inbox or whether it had be diverted to a spam folder.

In any event, Defendant has failed to cite any case law indicating that a loss mitigation application is not received if it is diverted to a spam email folder. Thus, Plaintiff has identified a factual dispute as to when the loss mitigation application was received.

### iii. Plaintiff's initial loss mitigation application was incomplete

Defendant next contends that Plaintiff's loss mitigation application was incomplete and appears to argue that Defendant was therefore not in violation of § 1024.41(b)(2). (DE 52 at 12). Plaintiff responds that Defendant is obligated to respond to a loss mitigation application under § 1024.41(b)(2), regardless of whether or not it is complete. (DE 56 at 12). Plaintiff notes that "[t]he whole point of the written notification required pursuant to this section is for the servicer to inform a borrower as to whether their application is complete, and, if incomplete, 'the notice

---

[9] Mr. Desmond sent a copy of the November 4 Email to "sent@verobeachlegal.com." After Mr. Desmond sent the November 4 Email, it appears there was no response from Ms. Green. Instead, it appears Mr. Desmond continued the email thread by replying all from the sent@verobeachlegal.com email account on November 17. Ms. Green then responded only to the sent@verobeachlegal.com that same date. Apparently after realizing she had responded to the "sent" email account, Ms. Green then forwarded her response to Mr. Desmond on November 20. *See* (DE 56-1).

shall state the additional documents and information the borrower must submit to make the loss mitigation application complete.'" (*Id.*) (quoting § 1024.41(b)(2)). The provision mandates that servicers, in their acknowledgement of receipt of a lost mitigation application, indicate whether or not the application is compete. Even assuming Plaintiff's application was incomplete, Defendant was still required to provide notice to Plaintiff within five days of receiving the application.

### iv. Defendant complied with § 1024.41(b)(2) by responding to the loss mitigation application

Defendant contends that "the extensive documentary evidence demonstrates that the Bank properly handled the loss mitigation application in accordance with § 1024.41(b)(2)." (DE 52 at 13). This is, however, based on Defendant's position that the application was not received until December 1, 2014. As the receipt date is disputed, summary judgment cannot be granted on this basis. For all of these reasons, Defendant's Motion for Summary Judgment is denied as to Count I.

### c. Count II

Count II alleges violations of § 1024.41(g). The provision states that a servicer is prohibited from moving for foreclosure judgment if "a borrower submits a complete loss mitigation application . . . more than 37 days before a foreclosure sale." 12 C.F.R. § 1024.41(g).[10] Defendant argues that "[t]here is no evidence that a foreclosure sale was scheduled on December 1, 2014, when [Defendant] received [Plaintiff]'s application, or that [Defendant] received a complete application on December 1, 2014." (DE 52 at 15).

---

[10] In its Motion for Summary Judgment, Defendant did not argue any of the three exceptions to this general prohibition applied. *See* 12 C.F.R. § 1024.41 (g)(1)-(3).

In response, Plaintiff contends that, since the application was sent on November 4, 2014, and Defendant failed to respond to the application, the November 4 Email was considered facially complete, thereby invoking § 1024.41(g).  (DE 56 at 15).

An application is considered "facially complete" if "no additional information is requested" in the borrower's notice.   § 1024.41(b)(2)(i)(B).   Facially complete applications prohibit servicers from moving for foreclosure judgments. *See* 12 C.F.R. § 1024.41(c)(2)(iv) ("If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application.").

According to Plaintiff, because Defendant never notified Plaintiff of receipt of the application or indicated that it was incomplete, *see supra* Section IV(b), the November 4 Email constituted a facially complete application on November 12, 2014 (5 days after receipt of the November 4 Email excluding weekends and public holidays) and Defendant was prohibited from moving for foreclosure judgment as of that time date § 1024.41(g).  However, there is a genuine dispute as to when Plaintiff sent Defendant a loss mitigation application and, thus, whether the application was deemed facially complete on November 12, 2014.  Thus, there is a genuine dispute of material fact as to whether Defendant improperly moved for foreclosure judgment under § 1024.41(g).  Accordingly, the Motion for Summary Judgment, as to Count II, is denied.

### d.  Count III

Count III alleges Defendant failed to comply with § 1024.41(h) when it handled Plaintiff's Appeal of Denial.  Section 1024.41(h) requires servicers to conduct an "independent evaluation," of denials of loss mitigation applications, "by different personnel than those responsible for evaluating the borrower's complete loss mitigation application." § 1024.41(h).

Defendant contends that "[t]here is no evidence that the Bank failed to perform an independent review of [Plaintiff's] application. To the contrary, it is evident that [Defendant] did perform an investigation because the rejection letter, electronically signed by Stewart Flick . . . contains specific information relevant to [Plaintiff's] loan . . . ." (DE 52 at 16).  In response, Plaintiff contends that the "burden to establish that no genuine issue of material fact exists in regards to a motion for summary judgment lays upon the moving party" and that "[a]t no point in time does Defendant's argument [] allege that Plaintiff's application was . . . reviewed by different personnel than those responsible for evaluating the borrower's complete loss mitigation application as would be required by 12 C.F.R. § 1024.41(h)."  (DE 56 at 16) (internal quotations omitted).

Plaintiff misconstrues the burden on a motion for summary judgment.  Defendant has identified the absence of evidence to support Plaintiff's claim under Count III.  Plaintiff, in turn, has not cited any evidence indicating Defendant failed to conduct an independent review of the denial by different personnel than those responsible for evaluating the loss mitigation application.  Thus, as to Count III, the Motion for Summary Judgment is granted.

### e.  Counts IV, V, and VI

Counts IV, V, and VI allege violations under § 1024.35(e), for failing to properly respond to the First and Second Notice.  Defendant argues § 1024.35 does not provide a private right of

action.  (DE 52 at 17) (citing *Miller v. HSBC Bank U.S.A., N.A.*, No. 13 CIV. 7500, 2015 WL 585589 (S.D.N.Y. Feb. 11, 2015)).  In Response, Plaintiff argues the case to which Defendant cites, *Miller*, is "incorrect."  (DE 56 at 16).  Plaintiff contends that § 1024.35 was promulgated under RESPA, and that RESPA provides a private right of action under 12 U.S.C. § 2605(f).  (*Id.* at 17).

While § 2605 generally provides a private right of action for RESPA violations, 12 C.F.R. § 1024.35 does not.  Other sections promulgated under RESPA, such as § 1024.41, explicitly provide a private cause of action by referring to remedies under § 2605(f).  12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)").  However, Section 1024.35 makes no such reference and therefore does not provide a private right of action. *See, e.g.*, *Gresham v. Wells Fargo Bank, N.A.*, No. 15-40748, 2016 WL 1127717, at *3 (5th Cir. Mar. 21, 2016) ("Unlike Section 1024.41, Section 1024.39 does not explicitly convey a private right of action to borrowers.") (applying similar reasoning to § 1024.39 to find it did not provide a private right of action).  Accordingly, summary judgment is granted in favor of Defendant as to Counts IV, V, and VI.

### f.  Damages

Section 1024.41 provides for a private right of action under § 2605(f) of RESPA.  12 C.F.R. § 1024.41 ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)").  Section 2605(f) provides that a borrower may recover for "(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."  12 U.S.C. § 2605(f)(1). Defendant moves for summary judgment against Plaintiff on all claims for failing to establish

16

damages: (1) actual damages, including those for emotional distress, (3) statutory damages, and (3) punitive damages. (DE 52 at 13, 18-21).

### 1. Actual damages

Defendant first argues that Plaintiff "testified that his damages included attorney's fees, filing fees, court reporters, cost of the appeal, cost of the bankruptcy, emotional damages, physical impairment to his non-party wife via increased anxiety, stress to their non-party daughter, emotional distress, and damage to his real estate business" but that Plaintiff has "provided no evidence to substantiate the referenced damages." (DE 52 at 13).

Plaintiff responds that "until Defendant, as the moving party, has established that there is no genuine issue of material fact as to whether [Plaintiff] suffered damages pursuant to the alleged violations of Regulation X, [Plaintiff] is not required to produce evidence to the contrary." (*Id.*). Plaintiff again misconstrues the burden on a motion for summary judgment. As Defendant does not bear the burden of proof of this issue at trial, it may simply point to the absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Defendant has identified the absence of evidence and, as such, the burden has shifted to Plaintiff to establish that there is a genuine issue of material fact. *See Matsushita*, 475 U.S. at 585.

In his deposition, Plaintiff testified that, due to Defendant's improperly moving for the foreclosure judgment, Plaintiff was forced to file for bankruptcy. (DE 52-1, "Willson Depo," at 70:1-11). Plaintiff testified that there were attorneys' fees associated with the Trial and the subsequent bankruptcy, as well as other "nonspecific" damages, including lack of sleep, emotional stress, divorce, headaches, and anxiety. (DE 52-1 at 13). *See also* (DE 56 at 18).

**Litigation Costs.** Defendant contends that, as to the costs associated with the bankruptcy, Plaintiff has not produced evidence of the "attorney's fees, filing fees, court

reporters, cost of the appeal, [and] cost of the bankruptcy," for which Plaintiff seeks relief. (DE 52 at 13, 19); *see also* (DE 56 at 13). However, Plaintiff testified that those damages exist (DE 56 at 13) (citing Willson Depo at 69:21-70:11, 186:21). Plaintiff also cites to Plaintiff's Exhibit 2-G, checks Plaintiff made out to Plaintiff's attorney purportedly for attorney's fees. (*Id.*) (citing DE 56-2 at 25-38). Further, Defendant does not dispute that Plaintiff retained counsel and filed for the appeal and bankruptcy. Thus, there exists a genuine dispute of material fact as to whether Plaintiff has suffered such damages.[11]

While Plaintiff has established a genuine dispute of material fact as to the existence of monetary damages, it is unclear whether Plaintiff provided a computation to Defendant through initial disclosures under Federal Rule of Civil Procedure 26, or provided Exhibit 2-G to Defendant through the course of discovery. Rule 26 requires a party to provide "a computation of each category of damages claimed" and material on which the computation is based. Fed. R. Civ. P. 26(a)(1)(A)(iii). Failure to disclose such computation may result in precluding such issue from reaching a jury. *See City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 899 (11th Cir. 2013) (affirming district court's exclusion of evidence of damage because the plaintiff failed to disclose the computation those damages). To the extent Plaintiff has not provided such a computation, Plaintiff will be precluded from suggesting any specific amount of damages to the jury. However, these issues are not adequately briefed and thus not before the Court at this time.

**Damages for Emotional Distress.** Moving to Plaintiff's alleged damages for emotional distress, including "emotional damages, physical impairment to his non-party wife via increased anxiety, stress to their non-party daughter, emotional distress, and damage to his real estate

---

[11] Defendant also makes an argument that Plaintiff cannot recover for the cost of filing the loss mitigation application as well as the two Notices and Appeal of Denial. (DE 52 at 18). However, Plaintiff does not appear to be seeking these damages.

business," Defendant argues Plaintiff cannot establish such damages. I agree. Plaintiff has not presented any evidence beyond conclusory assertions of these damages. (DE 52 at 13); *see also* (DE 56 at 13). Plaintiff has likewise not cited to any record evidence supporting these damages, except his deposition testimony generally discussing the stress he and his family experienced throughout the foreclosure process.

While "a plaintiff's testimony alone could support an award of compensatory damages for emotional distress[]. . . . the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a violation occurred supports an award for compensatory damages." *McLean v. GMAC Mortgage Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010) (affirming district court's grant of summary judgment in favor of the defendant where the plaintiffs' conclusory statements that they suffered emotional damage were insufficient to establish actual damages) (citing *Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005)) (internal quotations omitted).

Further, Defendant argues that Plaintiff has not established that Defendant's alleged RESPA violations caused the emotional distress, as opposed to Plaintiff's own failure to make his mortgage payments. (DE 52 at 13). A plaintiff must "present specific evidence to establish a causal link between the financing institution's violation and [his] injuries." *McLean*, 398 F. App'x 467 at 471; *see also Lage*, No. 14-CV-81522, 2015 WL 7294854. Plaintiff did not cite to any evidence in the record establishing a link between any RESPA violation of his emotional injuries. For these reasons, Defendant's Motion for Summary Judgment is granted as to Plaintiff's damages for emotional distress.[12]

---

[12] Although not presently before the Court, Plaintiff's theory of causation of actual damages also appears problematic. Plaintiff's theory appears to be that, had Defendant properly responded to

## 2. Statutory Damages

Defendant also contends there is no evidence of "pattern or practice of noncompliance" sufficient to warrant statutory damages.  (DE 52 at 14, 21).  In response, Plaintiff contends Defendant committed six violations of Regulation X in dealing with Plaintiff.  (DE 56 at 14).

RESPA provides for statutory damages "in the case of a pattern or practice of noncompliance."  12 U.S.C.A. § 2605(f)(1)(B).  The provision does not define what constitutes a pattern or practice.  However, the Eleventh Circuit has held that two violations do not constitute a pattern or practice.  *McLean*, 398 F. App'x at 471 (affirming district court's summary judgment finding no statutory damages based on two violations).

Here, Plaintiff alleges, at most, five violations of RESPA within a few months, all related to one borrower, and all related to the handling of one mortgage.  Such violations are insufficient to establish a pattern or practice of noncompliance.  *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013) (finding lack of pattern or practice based on complaint's "failure to allege any violations with respect to other borrowers").  As to statutory damages, summary judgment is granted in favor of Defendant.

## 3. Punitive Damages

---

the loss mitigation application, Defendant would not have sought the foreclosure judgment and Plaintiff would not have filed for bankruptcy to prevent the foreclosure sale.  *See* (Willson Depo at 189:22-190:15).  However, Plaintiff does not appear to dispute that Defendant denied Plaintiff's loss mitigation application on January 17, 2015.  Even if Defendant properly responded to the November 4 Email, the eventual outcome was the Denial.  It is unclear whether the November 4 Email would have prevented—rather than delayed—the Trial and ultimate entry of the foreclosure judgment, as well as Plaintiff's filing for bankruptcy.  *See, e.g. Lage*, 2015 WL 7294854, at *18 (granting summary judgment where the record was "devoid of damages bearing causal relationship to [the defendant's] purported failure to comply with 12 C.F.R. § 1024.35").  In addition, the Parties do not dispute that Defendant moved to continue the Trial but was denied by the Foreclosure Court.  This presents another problem with Plaintiff's theory of causation.  However, Defendant did not specifically make these arguments, and they are not before the Court at this time.

Third, Defendant contends Plaintiff is not entitled to punitive damages for RESPA violations. (DE 52 at 21). Plaintiff did not respond to this argument. Because § 2605 does not provide for punitive damages, and his claims are entirely based on violations of RESPA, I find Plaintiff is not entitled to recover punitive damages.

### V.    CONCLUSION

In conclusion, Plaintiff may proceed with Counts I and II but may not recover damages for emotional distress, statutory damages, or punitive damages. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that:

1. The Motion to Dismiss (DE 17) is **DENIED**.

2. The Motion for Summary Judgment (DE 52) is hereby **GRANTED IN PART AND DENIED IN PART**.

3. As to Count III, IV, V, and VI, summary judgment is **GRANTED** in favor of Defendant.

4. As to Counts I and II, summary judgment is **DENIED**.

5. As to damages for emotional distress, statutory damages, and punitive damages, summary judgment is **GRANTED** in favor of Defendant.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida on this _____ day of April 2016.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record